# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

United States of America,

    Plaintiff

v.

Wendolen Leonard Howard,

    Defendant

Case No.: 2:18-cr-00135-JAD-GWF

**Order re: Revocation of Supervised Release**

[ECF No. 65]

Defendant Wendolen Leonard Howard is under a 12-month term of supervised release following a custodial sentence for escape.[1] About six months into that supervised-release term, Howard's girlfriend, Tonya Pina, reported to Howard's probation officer that he had beaten Pina in the parking lot of a bar in Tacoma, Washington, where Howard and Pina were residing. Those allegations form the basis for a petition to revoke his supervised release for violating the condition that he not commit a crime. The crime alleged is fourth-degree assault in violation of Washington State Code provision RCW[2] 9A.36.041, a misdemeanor.

Howard contests the allegations, so I held an evidentiary hearing[3] during which the government presented testimony and documentary evidence from three witnesses: Pina's friend, Cassandra Nichols, who called 911 after Pina came to her door visibly battered and told Nichols that Howard had beaten her; patrol officer Joshua Overly, who responded to that 911 call; and Howard's probation officer, Nick Basset. The government did not present Pina's testimony, and much of the witnesses' testimony focused on Pina's statements to them that her injuries were

---

[1] ECF. No. 32 (judgment).

[2] The Revised Code of Washington.

[3] *See* 2/24/2020 hearing minutes at ECF No. 61; partial transcript of hearing at ECF No. 66.

inflicted by Howard. Defense counsel objected to this testimony as hearsay and as a violation of Howard's due-process and confrontation rights since Pina could not be questioned.

After considering all the evidence and arguments presented at the February 24, 2020, hearing, along with the parties' supplemental briefing,[4] I find and conclude by a preponderance of the evidence that Howard committed assault in the fourth degree against Pina, in violation of RCW 9A.36.041(1), a misdemeanor, and it is my inclination to revoke Howard's supervised release and sentence him to time served followed by six months of supervised release. The parties' positions about the nature and admissibility of the testimony have been exhaustively argued and briefed, so the court will not hear additional argument on those issues at tomorrow's hearing. We will begin the hearing with argument about (1) whether supervision should be revoked in light of my findings and conclusions and (2) the appropriate sentence in light of my stated inclination.

**Discussion**

**I.     The evidence establishing the violation**

In Washington state, a "[f]ourth degree assault is essentially an assault with little or no bodily harm, committed without a deadly weapon—so-called simple assault."[5] "Under Washington law, the definition of 'assault' derives from the common law[] and includes any unlawful touching that is harmful or offensive, whether or not physical injury results."[6] I start

---

[4] ECF Nos. 68 (government), 70 (defendant).

[5] *Hahn v. Sinclair*, No. C13-5263 RBL/KLS, 2013 WL 6049030 at *12 (W.D. Wash. Nov. 15, 2013) (citing RCW 9A.36.041(1)).

[6] *Eason v. Everett Mun. Court*, No. C06-322-JCC, 2007 WL 1991180 at *3, n.1 (W.D. Wash. July 9, 2007) (citing *State v. Baker*, 151 P.3d 237, 239 (2007)).

my analysis by describing what evidence I rely on to find that the government has established Howard's fourth-degree-assault violation by a preponderance of the evidence.

There is overwhelming evidence that Pina was the victim of simple assault. Nichols testified to her eye-witness observations of Pina when she appeared at Nichols's door: her face was swollen and bruised, she was shaking, crying, and "a little bit hysterical." "Her lips were busted open and bleeding," and the injuries appeared recent. Her clothes "were muddy and wet." And Nichols saw that every time Pina opened her jaw to talk, Pina would wince in pain. Nichols confirmed that Pina did not have these injuries when she saw her just five hours earlier.

The photographs of Pina from that night, which were admitted into evidence, corroborate the accuracy of Nichols's observations.[7] And the fact that Nichols was spurred to call 911 upon seeing Pina's condition further corroborates the fact that she appeared to have been the victim of a harmful, unlawful touching.[8] ("As soon as I opened the door, I said I was calling 911. She didn't get a chance to say it was okay or not okay."). Patrol Officer Joshua Overly's personal observations corroborate Pina's condition, too. He recounted that Pina was shaking, appeared rattled, had apparently been crying, and was applying ice to facial injuries, and that she appeared to be having difficulty speaking because her mouth was injured. I found the testimony of Nichols and Overly to be credible, unbiased, and reliable.

Nichols's testimony also establishes by a preponderance of the evidence that it was Howard who committed that assault. Nichols testified that Pina told her immediately on her arrival that the beating she suffered was delivered by Howard.[9] The conclusion that Howard was

---

[7] Exhibits 2-1, 2-3, 2-4, 2-6, 2-9, 2-10, 2-11, 2-15, 2-16.

[8] I rely only on the fact that Nichols called 911; my decision is not at all based on the content of that call.

[9] This is the only statement of Pina that I rely on in support of my revocation decision.

3

the assaulter is also supported by circumstantial evidence: Nichols knew Pina and Howard to be in a relationship, the couple had been recently living together but Howard had spent the last few nights on Nichols's couch, and Howard and Pina had left together from Nichols's house at about 7 p.m. on the evening of the assault.

Based exclusively on the evidence I have detailed in this section, I find by a preponderance of the evidence that Howard violated his supervised-release condition that he not commit another crime by assaulting Pina in violation of RCW 9A.36.041(1). I exclude from consideration all other evidence, so I do not address the defense's objections to that evidence.[10]

## II. Resolution of defense objections to the relied-upon evidence

Howard objects to the use of Pina's inculpatory statements as a basis to revoke his supervised release. He contends that they are inadmissible hearsay, and that their use violates his rights to due process and to confront Pina.

### *A. Pina's identification of Howard as her assaulter was an excited utterance.*

Pina's confession to Nichols that Howard had assaulted her is not excludable under the hearsay rule because it qualifies as an excited utterance under Federal Rule of Evidence 803(2). An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."[11] "When a hearsay statement is offered under this exception, the trial court must make a preliminary factual determination that the declarant was so excited or distraught at the moment of utterance that [s]he did not reflect (or

---

[10] Additionally, because I do not rely in any way on the testimony of Probation Officer Bassett, and I deny the government's motion for a material-witness warrant, I need not and do not reach the defense's objections with respect to these issues.

[11] Fed. R. Evid. 803(2).

4

have an opportunity to reflect) on what [s]he was saying."[12]  "Rather than focusing solely on the time a statement was made," courts must "consider other factors, including the age of the declarant, the characteristics of the event[,] and the subject matter of the statements."[13]

Pina's statement to Nichols that it was Howard who had assaulted her qualifies as an excited utterance under Rule 803(2).  Nichols's eye-witness account of Pina's physical appearance at the time of the statement established that Pina was too distraught at the moment of utterance to reflect on her inculpation of Howard.  Pina was shaking, crying, "a little bit hysterical," bleeding, muddy, and wet.  She had multiple, visible and fresh injuries to her face and neck.  The beating that would cause the injuries that she suffered would have been startling, and the characteristics of that event plus Pina's appearance, behavior, and condition as reported by Nichols establish that Pina was still under the stress of that attack when she told Nichols that Howard was responsible for her injuries.  So, Nichols's testimony that Pina told her that Howard had beaten her qualifies as an excited utterance under FRE 803(2) and is not excludable hearsay.

### B. Consideration of Pina's statement does not violate Howard's due-process rights.

Even if Pina's statement were hearsay, it would not necessarily be excludable from this proceeding because "the Federal Rules of Evidence do not apply to supervised release revocation hearings."[14]  Despite these relaxed rules, supervisees "are entitled to certain minimal due-process requirements,"[15] including "a due process right to confront witnesses against [them during [their]

---

[12] *United States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977).

[13] *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995).

[14] *United States v. Verduzco*, 330 F.3d 1182, 1185 (9th Cir. 2003) (citing *United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997)).

[15] *United States v. Walker*, 117 F.3d 417, 420 (9th Cir. 1997) (quoting *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994)).

5

supervised release proceedings . . . unless the government shows good cause for not producing the witness."[16] "In determining whether the admission of hearsay evidence violates the releasee's right to confrontation, the trial court must balance the releasee's "right to confrontation against the Government's good cause for denying it."[17] The Ninth Circuit has instructed that, when conducting that balancing test, "the trial court may consider the importance of the evidence to the court's finding, the releasee's opportunity to refute the evidence, and the consequences of the court's finding," along with the "difficulty and expense of procuring witnesses" and the "'traditional indicia of reliability' borne by the evidence."[18]

I find that the balance tips in favor of utilizing Pina's statement implicating Howard despite his inability to confront her. Although I have considered each of the Ninth Circuit's recommended factors and recognize that Pina's statement is a key piece of identification evidence here, I find that the most weighty factors are the difficulty and expense of getting Pina on the witness stand and the traditional indicia of reliability that surrounds this evidence.

The government had good cause to conduct this hearing without Pina's testimony. At the time of this assault, Pina was living several states away and would have needed to travel to Las Vegas for this hearing. More important, however, is the nature of this situation. Domestic-assault victims are "generally reluctant or unable to testify" against their abusers.[19] Pina is no

---

[16] *United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005) (quoting *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999)).

[17] *Id.* (quoting *Martin*, 984 F.2d at 310).

[18] *Id.* (quoting *Martin*, 984 F.2d at 312).

[19] *Giles v. California*, 554 U.S. 353, 405 (2008). *See also* Anoosha Rouhanian, *A Call for Change: The Detrimental Impacts of Crawford v. Washington on Domestic Violence and Rape Prosecutions*, 37 B.C.J.L. & Soc. Just. 1, 25 (2017) ("There are a myriad of reasons why a domestic violence victim chooses to be unavailable at trial, including being afraid to re-face past abuse, being too intimidated to testify at trial, experiencing overt threats from the defendant, fearing the economic hardship that could accompany breaking ties with the abuser, being

exception; she told Nichols that she did not want to testify and was not going to Las Vegas for this hearing.  Pina also was aware that a U.S. Marshal had left his card at her home, and she was not going to contact him.[20]  It was thus highly unlikely that Pina would appear in this case under a subpoena.  And to issue a warrant for the arrest of this domestic-violence victim so that law enforcement could lock her up and transport her to testify in a supervised-release-revocation proceeding against her attacker would be the antithesis of justice.  So the difficulty of procuring Pina's testimony was great.

      The circumstantial evidence that Howard was living with Pina but had recently left her home and was staying on Nichols's couch, that Pina and Howard had left together to go out for the evening, and that Pina was exhibiting physical signs of having been recently and seriously assaulted, provides the traditional indicia of reliability for this out-of-court statement.  That indicia is bolstered by my finding (based on demeanor and the nature and internal consistency of her testimony) that Nichols was a credible witness.  In sum, I find that the government had good cause not to produce Pina and that Howard's due-process right to confront Pina during this supervised-release revocation hearing was outweighed by the government's good cause for not bringing her to testify.  So Howard's due process rights are not violated by the court's use of Pina's statement that Howard assaulted her.

---

vulnerable to questioning on highly personal and sensitive topics, or feeling too guilty to testify against the defendant.  Regardless of the particular reason, they all render the declarant unavailable.").

[20] I consider Pina's out-of-court statements to Nichols only for the purpose of evaluating this confrontation issue, not as evidence in support of the violation.

**Conclusion**

I find and conclude by a preponderance of the evidence that Howard committed assault in the fourth degree against Pina, in violation of RCW 9A.36.041(1), a misdemeanor. This crime violated the condition of Howard's supervised release that prohibits him from committing a new crime. It is my inclination to revoke Howard's supervised release in light of this violation, and sentence him to a term of time served followed by six months of supervised release. If Howard intends to return to Washington state, I also intend to ask the U.S. Probation Office to seek to transfer jurisdiction of this matter to the appropriate district in Washington to conserve judicial and law enforcement resources should future revocation proceedings be required.

IT IS THEREFORE ORDERED that the Government's Application for a Material-Witness Warrant **[ECF No. 65] is DENIED.**

IT IS FURTHER ORDERED that the court will not hear additional argument on the evidence or the court's findings and conclusions at tomorrow's hearing. We will begin the hearing with argument about (1) whether supervision should be revoked in light of the court's findings and conclusions and (2) the appropriate sentence in light of the court's stated inclination.

Dated: March 19, 2020

_____
U.S. District Judge Jennifer A. Dorsey